## HYE HARRIS v. STATE.

No. A-7895.   Dec. 17, 1931.
(6 Pac. [2d] 448.)

Roy White, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, P. J.   The plaintiff in error, for convenience referred to as the defendant, was convicted of robbery with firearms and sentenced to serve a term of five years in the state penitentiary, and appeals.

The testimony on behalf of the state in substance is as follows:   C. L. Chastain was a farmer living about a mile from the home of the defendant, who lived with

434

his father, Frank Harris. On October 28, 1929, Chastain sent a man by the name of Putnam to town to purchase some groceries. Putnam drove Chastain's team to a wagon belonging to a man by the name of Freer, who was the father-in-law of Putnam. The defendant in this case accompanied Putnam to Henryetta. A Miss Freer, who was the sweetheart of the defendant, also accompanied them. Some time in the night following the day the defendant went to town with Putnam, Chastain claims the defendant came to his house and he called to him and asked him if that was Rye, and he said it was. The defendant came into the house with a pistol in his hands, and told Chastain to put up his hands, and asked where the money was, and was advised by Chastain that the money was in his pants. Chastain further states that the defendant took what money he had out of his pants, and, as he started to leave, said, "Don't call me Rye, I am not Rye." Chastain positively identified the defendant, and is corroborated by Mrs. Bessie Williams and her daughter, Tressie Williams. They all stated they recognized the voice of the defendant, and Mr. Chastain states there was sufficient light through the window that he could see, and he was positive that it was the defendant. The testimony further tends to show that a short while before the robbery, and the night of the robbery, defendant stopped at the house of a man by the name of Brown and wanted to trade for a pistol.

The defendant in his testimony admitted he stopped at Brown's house to trade for a pistol, and admits that Miss Freer was with him at the time. He then states he went on up to the home of the Freer girl. Then he went to his father's home, where he went to bed, and claims he picked cotton all day. He admits, however, that early the next morning he went to the Freer home and gave

Miss Freer $10; that she wanted the $10 to make a trip to McAlester.

When the defendant was arrested, he had in his possession about $13. He claims he had earned this money by working, and could not explain why, if he was going to let Miss Freer have the money, he did not let her have it the day they went to Henryetta. The defendant's father and mother testified that the defendant came home at a reasonable hour the night of the robbery, and that he came in and went to bed; that he remained at home the remainder of the night.

Several errors have been assigned by the defendant, but the only one urged in his argument is the question of the sufficiency of the testimony to convict the defendant. There is not only the positive testimony of three witnesses who claim to have identified and recognized the voice of the defendant, but the witness Chastain testified he could see sufficiently to identify the defendant; in addition to the positive identification of the defendant, other circumstances, from the morning of the day previous to the night of the robbery, up to and including the giving of the $10 to Miss Freer by the defendant, tend to connect the defendant with the commission of the crime.

There is no complaint that the court did not correctly instruct the jury as to the law. The record has been carefully examined. The testimony contained therein is sufficient to sustain the judgment. The jury was very liberal with the defendant, and gave him the minimum punishment. The defendant had a fair and impartial trial. There are no errors in the record sufficient to warrant a reversal.

The judgment is affirmed.

EDWARDS and CHAPPELL, JJ., concur.